**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                 No. 08-CR-2341 JC

FREDERICK BEACH,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant Frederick Beach's Motion to Suppress Fruit of an Unconstitutional Interrogation, filed October 15, 2009 (Doc. 90)("Motion"). Having considered the Motion, the Government's response thereto, the parties' submissions, and having conducted an evidentiary hearing on January 7, 2010, I find the Motion not well taken and it is denied.

**I.**        **Background/Findings of Fact[1]**

On the evening of September 17, 2008, the Crown Point Police Department received a report of an unresponsive female, later identified as twenty-nine year old Verlina Kinsel, laying near a vehicle at an intersection located West of Gallup, New Mexico, within the boundaries of the Navajo Indian Reservation. Kinsel was pronounced dead shortly after her arrival at Gallup Indian Medical Center.

At approximately 10:30 p.m. the same evening, Defendant Beach voluntarily walked into

---

[1]The facts relevant to this Motion are largely undisputed; where material facts are in dispute, I record my findings herein.  See FED.R.CRIM.PR.12(d).

the Window Rock Detention Center and requested to turn himself in for, according to the Incident Report from Window Rock, "hurt[ing] his girlfriend real bad." Hearing Exhibit A. Beach was arrested and taken into custody. Approximately three and one half hours later, at 1:57 a.m., FBI Agent Matt Collar began a tape-recorded interview with Beach that would last approximately one hour. *See* Hr'g Exs. 1, 10 (Transcript and CD of Interview). Before beginning the interview, Agent Collar discussed Beach's legal rights with him, made some commentary on those rights, and then read Beach the Advice of Rights Form embodying *Miranda* warnings. Beach reviewed the Advice of Rights Form, initialed it after each section, and signed the form acknowledging his understanding of his rights and agreeing to answer questions without an attorney present. *See* Hr'g Ex. 2. Defendant acknowledges that the Advice of Rights Form contains proper *Miranda* warnings. Hr'g Tr. at 67:14-18 ("...Then he reads the Miranda warnings and those are unchallenged, those are the proper warnings, we are not suggesting that those warnings in Exhibit 2 weren't proper.").[2]

Beach now seeks suppression of his statements during the interrogation – and the fruits thereof – as unlawfully obtained in violation of his constitutional protections against self-incrimination. The gist of Beach's argument is that Agent Collar's commentary before and after the Miranda warnings were given, combined with the fact that the interview room was quite small and crowded, render his statements involuntary or coerced.

## II.     Discussion/Conclusions of Law

Defendant Beach contends that (1) his right to due process of law as protected by the

---

[2]The Court's citations to the transcript refer to the Court Reporter's original, unedited version. A final transcript may contain different page and/or line numbers.

Fifth Amendment was violated because the law enforcement officers interrogated Defendant in an inherently coercive setting; and (2) law enforcement officers actively misled and confused Beach as to the nature of his Fifth Amendment right against compelled self-incrimination protected in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), rendering his waiver invalid. Motion at 2. For these reasons, counsel seeks to suppress Beach's statements, including his confession, and the fruits thereof.

The Fifth Amendment states: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. Relying on that provision, the Supreme Court has held that if police take a suspect into custody and interrogate him, they must inform him of his *Miranda* rights, or his responses cannot be introduced into evidence at trial to establish his guilt. *See Berkemer v. McCarty*, 468 U.S. 420, 429 (1984). A statement may be deemed involuntary even if a suspect has been given his *Miranda* rights and properly waived them. *See United States v. Lopez*, 437 F.3d 1059, 1065 (10th Cir. 2006). Nonetheless, "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." *Berkemer*, 468 U.S. at 433 n.20. The government bears the burden of showing by a preponderance of the evidence that the confession is voluntary. *Lopez*, 437 F.3d at 1063.

In order to be effective, a waiver must be made "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. A court's inquiry into a waiver's validity has two "distinct dimensions." *Smith v. Mullin*, 379 F.3d 919, 932-33 (10th Cir. 2004). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. *Moran v. Burbine*, 475

U.S. 412, 421 (1986). Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. *Id.* Further, the Government has the burden of showing "both an uncoerced choice and the requisite level of comprehension." *Id.*; *U.S. v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir.1996).

Whether statements are made voluntarily requires consideration of the totality of the circumstances, recognizing both the characteristics of the defendant and the details of the interrogation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1976); *Lopez*, 437 F.3d at 1063. Factors relevant to that inquiry include: "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment." *Id.* Ultimately, the Court must determine whether Beach's confession is the product of an essentially free and unconstrained choice or if his will was overborne by physical or psychological coercion, threats, or by improper inducement. *See Lopez*, 437 F.3d at 1063; *United States v. Erving L.*, 147 F.3d 1240, 1248-49 (10th Cir. 1998). A confession is only involuntary if interrogating officers use coercive activity to undermine the suspect's ability to exercise free will. *Erving L.*, 147 F.3d at 1249.

     A.    **Physical Surroundings/Details of the Interrogation**

The room in which Beach was questioned is 9 feet by 8 feet in dimension. In that small room, Agent Collar, two other members of law enforcement and Defendant Beach were present –

a total of four people. There was some unknown configuration of furniture in the room and the door was open.[3] The questioning took place at approximately 2:00 a.m. Rosinda Ford, criminal investigator from Crown Point, and Kevin Nevil of the Window Rock Police Department were present, though Agent Collar alone interviewed Beach. Agent Collar maintained a pleasant, conversational demeanor at all times during the interview and did not once raise his voice when interacting with Beach. *See* Hr'g Ex.10. Collar and Ford were both unarmed and wearing plain clothes. H'rg Tr. at 10:20-11:7. Nevel was unarmed in uniform. *Id.* These facts, taken individually or collectively, do not significantly advance Beach's arguments in support of his Motion or undermine the Government's position. Were the issue before this Court whether Beach was in custody for purposes of triggering *Miranda*, these facts would be particularly relevant and probative. Here, of course, the fact that Beach was in custody at the time of questioning is not in dispute, and there is no reliable evidence that the conditions caused Beach's will to be overborne.

> **B.    Characteristics of Defendant/Agent Collar's Colloquy with Beach Before and After Miranda Warnings Were Given**

Defendant contends that Agent Collar's remarks to Beach both before and after he read him the Advice of Rights Form were misleading as to the nature of those rights. As a preliminary matter, I note that at the start of the hearing, defense counsel stated "our motion really is not challenging Mr. Beach's education or his ability to understand. The motion really

---

[3] I find that the photographs taken by Defendant's investigator and admitted into evidence by the Government at the hearing do not represent the configuration of the room at the time of the Beach interrogation. *See* Hr'g Exs. 3,4,5,6,8. Nor does the photograph of a larger room in the Crown Point facility bear significantly on the issues to be decided here, *see* H'rg Ex. 7, as Agent Collar testified credibly that he did not choose the room himself and was told it was the only room available.

goes to the coercive environment and the confusing and misleading Miranda warnings he was given." Hr'g Tr. at 2:12-18.  Notwithstanding counsel's willingness to concede that Beach is educated, intelligent and otherwise able to understand, the Court is *required* to evaluate and consider Beach's characteristics, including age, level of education, and intellect in performing its analysis.

At the time of the interrogation, Beach was approximately 36 years old.  Defendant Beach has an Associates Degree in Liberal Arts from Navajo Community College and also attended Northern Arizona University.  At the time of the incident giving rise to these charges, Beach was employed by the Navajo Nation in the Office of Budget and Management.  Given these characteristics, I find Beach was not "unusually susceptible to coercion because of age, lack of education, or intelligence."  *United States v. Nguyen*, 155 F.3d 1219, 1222 (10th Cir. 1998).

Defendant argues that law enforcement officers failed to convey the essential message of *Miranda* and actively misled and confused Beach regarding the nature of his rights.  Motion at 2. The statements Agent Collar made prior to reading Defendant the *Miranda* warnings contained in the Advice of Rights form are, in pertinent part, as follows:

> Q: You know, the main reason I'm out here is to give you an opportunity, as I said again, to put your story on something that right now is one-sided.  You know, it's not something we have to do.  It's something that I think is part of my job is to come out and put the human element of that.  Does that make sense?
> A: Yes.
> Q: You understand why I'm here?  Okay.  I know that you've come in here and that you've identified yourself to the officers and I know that you've come in here and that you have told them some things happening tonight.  I'd like to talk to you about that.  Obviously you know that you do have rights.  And before I can actually talk to you about that, I have to advise you of those.  I mean you've seen it on TV.  You know how it works.
> I'm going to go ahead and read your Miranda rights, is what it's called.

And what that basically means is tonight you get to pick and choose what you'd like to talk to me about.  Does that make sense?  I mean, in the movies it shows pretty much an opportunity, you can speak to somebody or you can't.

But in actuality, you can pick and choose the issues you choose to talk about or not talk about.  I just want to make that clear to you, in order for me to give you the opportunity that I'd like to tonight, which again is shine a light on this, that you're the only person that can.  I wasn't there.  I don't know you, I don't want to draw conclusions based on facts that I don't know all the answers to, particularly when I have the horse's mouth sitting right here in front of me that can help me with that.

So like I said, I want to make sure that you have the best possible chance to put your spin on this story in reference to what happened here tonight.  And like I said, we have a pretty good idea what happened based on you having already advised these officers of the circumstances.

But nonetheless, before I can ask you anything specifically about that, I do need to advise you of your rights.  Does that make sense?

A:  Yes.

Q:  Okay.  What I'm going to do is basically I'm going to read these to you.  Do you have any problems understanding English?

A:  No.

Q:  What's the farthest you went in school?

A:  College.

Q:  College?  Where did you go to college?

A:  NCC

Q:  NCC?  What did you – did you graduate?  What did you major in?

A:  It was Liberal Arts.

Q:  Liberal Arts?  Okay.  You had any drugs or alcohol tonight?

A:  No.

Q:  So you're not having any problems understanding what we're going through here?  Okay.  Basically what I'm doing right now is I'm dating this form and I'm putting the time as 2:03 in the morning.  And what I'm going to do is read each of these things to you, as I explained.  And when we're done, I'll ask you what you think about that and give you an opportunity to sign this or tell me, you know, however you want to discuss it.  So basically before we ask any questions, you must answer – or understand your rights.

> *You do have the right to remain silent.  Anything you say can be used against you in court.  And you have the right to talk to a lawyer for advice before we ask you any questions.  You have the right to have a lawyer with you during questioning; and if you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.  If you decide to answer any questions*

> *now without a lawyer present, you have the right to stop answering at any time.*

So basically that's just like I explained to you. It gives you that opportunity to pick and choose what it is you're comfortable talking to me with – or talking to me about, rather. I've read this statement, and basically I'm asking you if you'd be interested or if you're comfortable speaking with me right now without a lawyer.
A:  (No audible answer)
Q:  I mean, it's a yes or no question. I can't help you with this; but like I said, I'm not – I won't be coming back to get your story again. This is kind of a one-time shot for you to have an opportunity to tell me in your own words from having been there. You know, the reasons behind why people do the things they do.
And again, I've got to ask you. I can't really stray from this much. I need to ask you if you're comfortable, having heard me read these rights, would you like to speak with me tonight without a lawyer present?
A:  (Inaudible)
Q:  I'm sorry?
A:  (Inaudible). So I can talk about –
Q:  You can talk about whatever you want to talk about. If I ask you something you don't want to talk to me about, say, "I don't want to talk to you about that." You truly can pick and choose. But I need you to answer that question, if you're willing to speak to me tonight without a lawyer present, "yes" or "no." We've got to kind of cover that before I can do anything else.
A:  Yes. Yes.
Q:  Yes, you would? Okay. What I'm going to have you do if you would please initial next to all of these. Are you with me?
A:  Yeah.
Q:  So that I know you understand that. And if you would sign here, I'll witness it; and then I'll go ahead and talk to you. And I've read you this entire form.
A:  There's nothing on here about picking and choosing the questions you answer, right?
Q:  No, other than the questions I ask you, at anytime you can tell me to stop. It says right there.

H'rg Ex 1 (Interview Transcript) at 4:23-9:15 (emphasis added). First, the Court notes

that Defendant characterizes Collar's statements to Beach that he was free to "pick and choose"

the questions he would answer as deceitful. On this point, the Government notes that this is, in

fact, a legally accurate statement. *See Michigan v. Mosely*, 423 U.S. 96, 100 (1975) (when an individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.).  Accordingly, these comments do not constitute the "repeated mis-characterizations of [Beach's] rights as ***no more than*** the right to pick and choose" as he contends.  Reply at 5 (emphasis in original).  Instead, these "pick and choose" statements contribute little to Defendant's contention that Beach's statements were coerced and perhaps even less to the questions of knowing and voluntary.  In fact, permitting an individual to answer some but not other questions has informed at least one court when making a finding of *voluntariness*, albeit in a somewhat different context.  *See United States v. Erikson*, 70 F.3d 1153 (10th Cir. 1995)(that an individual was not forced to answer any questions he did not want to answer was one of several "key facts" leading court to conclude statements were made voluntarily for purposes of admissibility).

Next, the Court notes that the audio recording of the interview contains uninterrupted pauses between Agent Collar's questions and Defendant Beach's answers, a fact that Collar reasonably attributed to Beach's thoughtful contemplation of the decision before him.  Hr'g Tr. at 10:1-16.  The Court, too, finds these pauses consistent with a deliberative process, and that such process might involve some hesitation is unremarkable under the circumstances.

In sum, the evidence before the Court indicates that after contemplating his choices, then reviewing, initialing, and signing the Advice of Rights Form, Beach opted to talk with Agent Collar.  Accordingly, I find by a preponderance of the evidence that Defendant Beach properly waived his Fifth Amendment rights.

### III.     Conclusion

Embracing both the characteristics of the accused and the details of the interrogation in my totality of the circumstances analysis, I find no violation of Defendant's constitutional rights because Defendant's statements to law enforcement on September 18, 2008 were both knowing and intelligent and were not the result of physical or psychological coercion.  Accordingly, the Motion is denied.

WHEREFORE,

**IT IS ORDERED** that Defendant Frederick Beach's Motion to Suppress Fruit of an Unconstitutional Interrogation, filed October 15, 2009 (Doc. 90) is **DENIED**.

Dated January 26, 2010.

s/John Edwards Conway
_____
SENIOR UNITED STATES DISTRICT JUDGE